SUPREME COURT. At Chambers, Penn Yan, July 3, 1857. Before *Welles*, Justice.

## THE PEOPLE *v.* GEORGE WEBSTER.

Where a person, arrested and brought before a magistrate under the seventeenth section of the act entitled " An act to suppress intemperance and to regulate the sale of intoxicating liquors," passed April 16, 1857, refused to be sworn and examined as to the cause of his intoxication, the magistrate has no power to commit him to prison for such refusal.

It seems that justices of the peace, in examinations upon complaints made before them in criminal cases, have no power to commit persons for refusing to be sworn as witnesses.

THE defendant having been committed to the jail of the county of Yates, the writ of *habeas corpus* was allowed, directed to the sheriff of said county, who made return thereto, that the defendant was committed to jail and was held in prison by virtue of a warrant issued by J. J. Diefendorf, Esq., a justice of the peace of said county, which warrant is in the words and figures following :

*Yates County, ss :*

The People of the State of New-York, to the Sheriff, Under Sheriff, Deputy Sheriffs, any constable, and to the keeper of the common jail in said county, greeting :

Whereas, George Webster was duly apprehended this day by Martin Beam, a constable of said county, and brought before me, the undersigned, justice of the peace, charged on the oath of said Martin Beam, constable, with having this day been found drunk, or found and seen intoxicated, on Main-street, in the village of Dundee, in said county, in violation of section seventeen of an act to suppress intemperance and to regulate the sale of intoxicating liquors, passed April sixteenth, one thousand eight hundred and fifty-seven ; and the said George Webster having refused to be sworn, to be examined as to the cause of such intoxication : You are therefore hereby commanded to convey the said George

Webster to the common jail of said county, and to deliver him to the keeper thereof; and you, the said keeper, are hereby required to keep said George Webster in safe custody in said jail until he shall consent to be sworn or affirm, and to answer all questions pertaining to such examination, or until he be discharged by due course of law.

Given under my hand, at Starkey, this eighteenth day of June, one thousand eight hundred and fifty-seven.

J. J. DIEFENDORF,
*Justice of the Peace in and for Yates county.*

Upon this writ a motion is made that the defendant be discharged from his said imprisonment. The matter was argued by

*D. J. Sunderlin,* for the defendant.

*H. M. Stewart* (District Attorney), for the people.

WELLES, J.—It is denied on the part of the defendant that the justice possessed the power to commit him to jail for the cause alleged in the warrant. That cause, as the warrant states, was that the defendant refused to be sworn as to the cause of his intoxication. The act under which the proceedings against the defendant were had (*Laws of* 1857, *ch.* 628) does not authorize the justice to commit the defendant for refusing to be sworn in such case. We are, therefore, to look elsewhere for such power, if any exists.

It is provided by the Revised Statutes that "any magistrate, authorized to exercise any jurisdiction in respect to offences, shall have the same power to preserve order during any judicial proceedings, and to punish for contempts, in the like cases and in the like manner as provided in the second chapter of the third part of the Revised Statutes in relation to justices of the peace in civil cases." (2 *R. S.,* 748, § 44; *id.,* 931, § 51, 4*th ed.*)

The People *v.* Webster.

The provisions referred to as contained in chapter two, part three, are as follows:

" § 274. In the following cases, and in no others, a justice of the peace may punish, as for a criminal contempt, persons guilty of the following acts :

" 1. Disorderly, contemptuous or insolent behavior towards such justice, while engaged in the trial of a cause, or in the rendering of any judgment, or in any judicial proceedings, which shall tend to interrupt such proceedings, or to impair the respect due to his authority.

" 2. Any breach of the peace, noise or any other disturbance, tending to interrupt the official proceedings of a justice.

" 3. Resistance willfully offered by any person in the presence of a justice to the execution of any lawful order or process made or issued by him."

Sections two hundred and seventy-five, two hundred and seventy-six, two hundred and seventy-seven and two hundred and seventy-eight prescribe the punishment for such contempt and direct the manner of proceeding to enforce such punishment.

Section two hundred and seventy-nine is as follows :

" When a witness attending before any justice, in any cause, shall refuse to be sworn in any form prescribed by law, or to answer any pertinent or proper question, and the party at whose instance he attended shall make oath that the testimony of such witness is so far material that without it he cannot safely proceed in the trial of such cause, such justice may, by warrant, commit such witness to the jail of the county."

Section two hundred and eighty relates to the form of the warrant authorized by the last section, and directs that the witness shall be closely confined, pursuant to the warrant, until he submit to be sworn or to answer, as the case may be.

Section two hundred and eighty-one directs that the justice shall thereupon adjourn the cause, at the request of the party in whose favor such witness attended, from time to time, until such witness shall testify in the cause, or be dead or insane. (2 *R. S.*, 273, 274; *id.*, 458, 459, *4th ed.*)

It is not contended that this case is within either the first or second subdivision of section two hundred and seventy-four. But it is suggested that the third subdivision of that section provides for the case under consideration. It is argued that the refusal to testify, recited in the warrant, was a willful resistance of a lawful order. But this, I apprehend, is a mistake. It was an omission to perform a duty, a disobedience of a requirement of the justice. It was not, in any proper sense, resistance. The subdivision relates to acts committed by any person by which the execution of an order or process of the justice is hindered, obstructed or prevented, and not to an omission to act or a a refusal to obey. (*The People* v. *Benjamin*, 9 *How. Pr. R.*, 419.)

Suppose a justice, in a case where a sufficient number of jurors fail to attend in obedience to a *venire*, makes an order that the constable summon a certain number of bystanders or others, as provided in section one hundred and one (2 *R. S.*, 243), to supply the deficiency. If any person, in the presence of the justice, should do any act to hinder or obstruct the execution, by the constable, of this order of the justice, it would be a resistance of a lawful order, and a contempt provided for in the third subdivision in question. But if the constable should refuse to obey the order to summon the bystanders, or if a juryman regularly summoned and drawn on the panel should refuse to be sworn or affirmed as such, the refusal would not be, in my judgment, a contempt of court which the justice has power to punish, as for a contempt. The above cases are put to illustrate the distinction between positive and affirmative acts of resistance and mere passive disobedience. The former, and

The People *v.* Webster.

not the latter, are, as I think, intended to be provided for by the third subdivision of the above two hundred and seventy-fourth section.

The foregoing view is strengthened by an examination of article first of the second title of the next chapter of the Revised Statutes, entitled, "Provisions concerning Courts of Record, their powers and proceedings." The eighth section of that title contains an enumeration of acts for which persons guilty thereof may be punished by Courts of Record as for criminal contempts. The first and second subdivisions of the last mentioned section are in substance like the corresponding subdivisions of section two hundred and seventy-four, above recited, in relation to justices of the peace. The next three subdivisions are as follows:

" 3. Willful disobedience of any process or order lawfully issued or made by it.

" 4. Resistance willfully offered by any person to the lawful order or process of the court.

" 5. The contumacious and unlawful refusal of any person to be sworn as a witness, and, when so sworn, the like refusal to answer any legal and proper interrogatory." (2 *R. S.*, 278; *id.*, 467, 4*th ed.*)

It will be perceived that the legislature, in conferring power upon Courts of Record to punish for contempts, have, in the above third subdivision of section eight, declared willful disobedience of an order or process a contempt, and in the subdivision immediately following have also declared resistance to such order or process a like contempt; thus, as I think, expressly recognizing the distinction mentioned. The language of the fourth subdivision is quite as comprehensive as that of the third subdivision of the section in relation to Justices' Courts, and if the latter will bear the construction contended for, as contemplating acts of mere disobedience, no necessity is perceived for the introduction of the above third subdivision of the section in relation to Courts of Record. It cannot be supposed that the legislature regarded

it necessary to be more specific in defining the powers of Courts of Record than of courts and officers of inferior and limited jurisdiction.

It remains only to consider whether the power in question is conferred by the above recited section ( 2 *R. S.*, 274, 279 ) in relation to the case of witnesses refusing to be sworn or to testify on trials before justices of the peace. It will be seen that the power to commit the witness, as provided in that section, is conditional, dependent upon the fact that the party at whose instance the witness attends shall make oath that the testimony of the witness is so far material that without it he cannot safely proceed in the trial of the cause. The power of the justice to commit does not therefore vest until the party makes such oath. The section is entirely inapplicable to a case like the present. Here is no party to make the oath, and the warrant does not show that any such oath was made.

It is not a case in which such oath is at all contemplated, which, in the case provided for in the last mentioned section, is to give the justice authority to commit. There is no trial of a cause. The occasion for bringing the defendant before the justice was his being found intoxicated in a public place, &c., and it was not upon his trial for that offence that he was sought to be made a witness. It was a special proceeding, directed by the act of the last session of the legislature, in which it became the duty of the justice to administer to the defendant an oath or affirmation, not to .prove the offence with which the defendant was charged, for that would be in violation of the sixth section of article first of the constitution, which declares that no person shall be compelled, in any criminal case, to be a witness against himself, but for the purpose of ascertaining the names of other persons implicated, against whom no complaint had as yet-been made. It was a case in every respect dissimilar to the one contemplated by the last mentioned section, and to which it will be found impossible to apply it. The prohibi-

The People *v.* Webster.

tory act of 1855 contained a similar provision in relation to a person found intoxicated, and required the magistrate before whom such person should be brought to administer an oath to him similar to that required in the seventeenth section of the law of the last session, under which the warrant in this case was issued, and provided further, that if any witness should refuse to be sworn or affirmed, or to answer any question pertinent to such examination or trial, other than such as would criminate himself, he should be committed to jail, there to remain until he should consent to be sworn or affirmed, and to answer all questions, &c. (*Laws of* 1855, *ch.* 231, *pp.* 350, 351, § 12.) Why a similar provision to commit a contumacious witness was not introduced into the temperance act of the last session of the legislature I am not able to conjecture. It is either a *casus omissus* in the latter statute or it was omitted by design; on either hypothesis the omission tends strongly to show the necessity of the provision to justify the exercise of the power.

If it shall be said that the view herein contained, in relation to the powers of justices of the peace to commit in criminal proceedings, will, if sustained, deprive them of important and necessary facilities for the eliciting of facts and advancing criminal justice in the detection of crimes, I can only say, I cannot help it. It is not for courts or judges to make laws; and if those upon whom that duty devolves deem an enlargement of the powers of justices in such cases necessary or wise, they have but to will it and it is done.

There were several other objections urged against the legality of the defendant's imprisonment, which I do not feel called upon to consider, for the reason that the foregoing views dispose of the case and require the discharge of the defendant.

Defendant discharged.